LANDRY, Judge.
Plaintiffs (husband and wife) instituted this action to recover damages resulting from an accident in which a 1969 Comet automobile, owned and being driven by the husband, ran into the rear of a tractor and semi-trailer owned by defendant truck line, being driven by owner’s employee, Curtis Norman, and insured by Travelers Indemnity Company. The accident occurred at approximately 5:30 P.M., March 28, 1971, when defendant’s truck stopped at the “Y” intersection of La. 10-440, Washington Parish, in deference to a detour sign indicating that Highway 440 was closed four miles ahead because a bridge was out. The trial court rejected the claims of plaintiff driver and his wife-guest passenger upon finding defendant driver free of negligence, and also upon finding that the sole proximate cause of the accident was the negligence of plaintiff driver in failing to see the parked truck in time to stop. Mrs. Warren is the sole appellant. We affirm.
Prior to the accident, both vehicles were traveling westerly upon the two lane, blacktopped highway. The road was dry, the weather clear and the sun shining brightly. The scene of the accident was a rural “Y” intersection formed by the continuation of Highway 440 in a westerly direction, and the branching off therefrom of La. 10 to the left or southwest. To the south of the “Y” was situated a store and service station owned and operated by Holyne Roberts. Access to Roberts’ premises was provided by means of a driveway, the precise nature, location and width of which does not appear in the record. Defendant driver was familiar with Highway 440, having driven it daily for some time in the course of his employment. On the morning in question, Norman had driven to work over Highway 440. While he noted some work being done on a bridge, he did not know the bridge would be closed on his return that afternoon.
Norman testified in essence that when he reached the intersection, he noted a barricade (detour sign) blocking the right or westbound lane of Highway 440 on which he intended to proceed. He stopped in the right or westbound lane of the highway about 20 feet east of the sign due to oncoming eastbound traffic consisting of a line of two or three cars. When the last oncoming car passed, Norman stepped onto the running board of his own truck and asked the driver of the passing vehicle why the barrier was up. While he was thus engaged, his truck was struck from the rear. He stated he could not pull off the highway 440), immediately adjacent to which shoulder on his right (north side of Highway 400), immediately adjacent to which was a deep ditch. He further stated he had been stopped only about a minute when the accident occurred. Norman denied that he left his truck and walked to Roberts’ service station to make an inquiry before the accident. He also stated that the semi-trailer he was pulling was 40 feet long. He further testified that when he stopped, he turned on his stop lights and “I.C.C. lights”. Norman admitted he did not put out any flares or reflectors or take any action to warn motorists his truck was stopped other than activating the lights mentioned. He acknowledged that the *259 parking area serving Roberts’ premises on the south side of the highway was sufficient to have accommodated his rig.
Plaintiff Warren testified to the effect he was traveling westerly at a speed of about 35 miles per hour because he had been experiencing mechanical difficulty with his vehicle. He acknowledged he was driving into a late afternoon sun which materially hampered his vision. He did not see the parked truck until he was about 15 to 20 feet away. He stated the truck was parked partially off the highway, that only about three feet of the truck extended onto the traveled portion of the highway, and that he could not veer to his left because he would have collided head-on with an oncoming eastbound vehicle. Warren stated he saw no flares or other indication that the truck was stopped. He also testified he observed no lights on the truck, and further opined that because of the dirty condition of the truck, it would have been difficult to see lights thereon if they were in fact burning. He admitted there was not sufficient room on the right shoulder of the highway for Norman to have parked his tractor-trailer completely off the traveled portion of the road.
The accident was investigated by Mr. Jim Alston, State Trooper, who found the detour sign had been erected in the westbound lane of Highway 440 a few feet west of the intersection. He noted the truck had stopped in its proper lane of travel, about 20 feet east of the detour sign, leaving the eastbound lane clear. He also testified that the shoulder on the right (north) side of the highway was ungrav-eled and too narrow for Norman to have parked completely off the road surface. He observed that on the right (south) side of the road, the shoulder was graveled for a short stretch, and that a driveway led into Roberts’ establishment. He noted that the detour sign indicated a bridge was out on Highway 440 about 4 miles ahead. Trooper Alston found that the right front of plaintiff’s car struck the left rear of the truck, it appearing that plaintiff driver attempted to veer to his left before the impact.
Mrs. Warren was not watching the road ahead at the time of collision. She did not see the truck and knew nothing concerning the occurrence of the accident.
Holyne Roberts stated in substance that he was serving gas to a customer when the impact occurred. He did not see the collision but went to the scene to be of assistance. He also stated he was quite busy at the time, and there were several cars parked on his premises. He also stated that before the collision, the truck driver had gotten out of his truck, walked about 150 feet to the service station area, and was there asking directions to Kentwood of Hayward Brumfield, since deceased. He confirmed that the truck was parked a very short time preceding the accident.
All parties concede applicability of LSA-R.S. 32:141, which provides in pertinent part as follows:
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway . . . .”
It is well settled that a motorist who parks on the traveled portion of a public highway is prima facie deemed in violation of the applicable statute and, to avoid liability for damages resulting therefrom, bears the burden of establishing necessity for having so parked. Odom v. Texas Farm Products Co., La.App., 229 So.2d 118, and authorities cited therein.
Appellant contends that Norman’s negligence in violating the statute, and failing *260 to protect traffic by setting out flares, reflectors or other warning signs or devices, was the sole proximate cause of the accident. LaDousa v. Johnson, La.App., 250 So.2d 158.
It is elementary that cases of this nature involve purely factual determinations which must be decided in the light of the circumstances peculiar to each case.
Appellant cites numerous cases in which drivers have been held liable for accidents which occurred when their vehicles, parked-on the traveled portion of a highway, were struck from the rear. We have read each such case and find them distinguishable on their facts. Most of the cited authorities involve accidents occurring at night or under circumstances where the driver could conveniently have parked off the traveled portion of the highway.
For example, Landry v. Meligan, La.App., 245 So.2d 782, involved a 4:00 A.M. accident in which the court found that defendant driver could have parked his vehicle on the shoulder of the road.
In Lobell v. American Indemnity Company, La.App., 211 So.2d 439, the accident occurred at 7:00 P.M., October 2, 1965, while defendant driver was pushing his disabled vehicle off the highway. The court found defendant negligent in not driving his vehicle off the traveled portion of the road onto an adjacent shoulder while the automobile was still operating under its own power.
In LaDousa v. Johnson, La.App., 250 So.2d 158, the accident happened at 8:00 P.M., November 20, 1968, during a misting rain. Defendant’s vehicle, which had been involved in a prior accident, was left blocking both eastbound lanes of a four lane highway. Despite heavy traffic, defendant driver took no precautionary measures to warn other motorists.
Summers v. Hartford Accident & Indemnity Co., La.App., 229 So.2d 744, involved a motorist who had stopped on a highway for approximately one minute to investigate an overturned vehicle on the side of the road. The driver of the parked vehicle was held negligent in failing to park on an available nine foot shoulder.
Defendant driver in this instance stopped, in broad daylight, in obedience to a detour sign completely blocking his proper lane of travel, and indicating that the route he desired to take was closed ahead. There can be no question but that Norman was justified in stopping under the circumstances. The dispositive issues are whether it was practical for Norman to have parked off the traveled portion of the highway and, if not, whether his failure to put out flares, reflectors or other signal devices amounted to negligence constituting a proximate cause of the accident.
We find the record establishes that it was impossible for Norman to have parked off the highway to his right because the shoulder on that side was too narrow, and immediately adjacent thereto was situated a deep ditch. We also find the record preponderates in favor of the conclusion that it was not practical for Norman to have crossed the highway with his heavy rig and to have parked on Roberts’ parking lot or on the left shoulder of the road.
It is' clear from the record that defendant’s truck was parked on the highway only a relatively short time, perhaps two minutes prior to the accident. However, the length of time a vehicle remains parked on a public highway is not the determinative factor in cases of this nature. Depending upon the circumstances, it may be negligence per se to park upon the traveled portion of a highway for any time at all. For example, to park on the traveled portion of a heavily traveled interstate highway or an expressway for any interval whatsoever, where off roadway parking is available, would constitute gross negligence. We note Summers, above, where parking for one minute was held to be negligent because off the road parking was available. Here we are concerned with a *261 rural two lane highway which had no off road parking facility available to the driver on his proper side of the highway. Considering these circumstances, the reasons for Norman’s stopping, and the fact that it was broad daylight, we find defendant driver was not negligent per se in stopping on the traveled portion of the highway.
We also find, as did the trial court, that Norman’s failure to put out flares, reflectors or other warning devices, did not constitute a proximate cause of the accident. In this regard, we note that Warren, traveling at 35 miles per hour with his visibility virtually zero because of the late afternoon blinding sun shining in his eyes, did not see the large truck at all until he was too close to avoid an accident. To hold that warning devices might have avoided this accident would be sheer speculation.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.